1 PAUL D. MURPHY (State Bar No. 159556)
  pmurphy@murphyrosen.com
2 MURPHY ROSEN LLP
  100 Wilshire Boulevard, Suite 1300
3 Santa Monica, California 90401-1142
  Telephone: (310) 899-3300
4 Facsimile: (310) 399-7201

5 Attorneys for Defendants
  James J. Rocknowski, John E. Rocknowski,
6 and Michael S. Cisneros

7

8 **UNITED STATES DISTRICT COURT**

9 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| 10 | TATSUNOKO PRODUCTION CO., LTD., a Japanese corporation, | ) CASE NO. CV12-09236-CBM FMOy) |
|---|---|---|
| 11 | | ) |
| 12 | Plaintiff, | ) **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; DECLARATION OF PAUL D. MURPHY; EXHIBITS** |
| 13 | vs. | |
| 14 | JAMES J. ROCKNOWSKI, an individual; JOHN E ROCKNOWSKI, an individual; and MICHAEL S. CISNEROS, an individual, | |
| 15 | | |
| 16 | | ) |
| 17 | Defendants. | ) |

18

19

20

21

22

23

24

25

26

27

28

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

# I.

# **INTRODUCTION**

Plaintiff Tatsunoko Production Co., LTD. ("Plaintiff") has filed a motion ostensibly to "enforce" the settlement agreement it entered with defendants James Rocknowski, John Rocknowski and Michael Cisneros (the "Individual Defendants"), but that is not really what the motion seeks to do. Instead, the motion – which is not supported by *any* competent, admissible evidence – seeks to hold Defendants liable for breach of contract and even asks the Court to impose an affirmative, mandatory injunction on each of the individual Defendants. As set forth more fully below, the motion suffers from numerous problems and should be denied it its entirety.

What is really going on here is that Plaintiff counsel has a dispute with a third party who apparently is refusing to turn over the website www.speedracer.com. Plaintiff's remedy, however, is to sue that third party. For some reason, Plaintiff stubbornly refuses to do so. Instead, Plaintiff is trying to bully the individual defendants to try to force them to give more "cooperation" than they have already given. As Plaintiff's counsel has been repeatedly notified, other than the efforts already extended, the individual Defendants have no ability to further push the third party to turn the website over to Plaintiff and absent a negotiated resolution between Plaintiff and the third party, Plaintiff's remedy is to sue that third party. Plaintiff is still not satisfied.

And if Plaintiff really believes that the individual defendants have breached their fully executed Settlement Agreement, Plaintiff's remedy is to sue them for breach of that contract. What Plaintiff cannot due is lump all of the three Individual Defendants together, run into Court without any competence evidence of breach and then expect the Court to grant them relief that amounts to an mandatory injunction without any discovery whatsoever.

*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT*

## II.

## **RELEVANT FACTUAL BACKGROUND**

For well over twenty years, non-party Speed Racer Enterprises, Inc. ("SRE") licensed the Speed Racer brand and intellectual property from Plaintiff. SRE's officers were defendants John Rocknowski and Jim Rocknowski, with defendant Michael Cisneros merely an employee. Over the years, the license agreement between SRE and Plaintiff sometimes lapsed before a new license agreement could be negotiated. During such periods, SRE continued to operate and license the brand and property under the belief that a new licensing agreement would be reached. Prior to 2012, this did not cause Plaintiff any concern.

In approximately 2012, the license agreement again lapsed, and as SRE had done in the past, SRE continued to operate and license the brand and property under the belief that a new licensing agreement would be reached. Plaintiff had since either been sold to a new owner or was otherwise under new management, and the new management took extreme exception to SRE's continued use of the brand and property. Plaintiff refused to renew the license agreement, and then sued SRE and later all of its officers and employees for breach of contract and fraud. SRE promptly went bankrupt. Plaintiff and the Individual Defendants then entered into the Settlement Agreement.

Importantly, prior to entering the Settlement Agreement, Defendants turned over to SRE the original of all documents in their possession relating to SRE. (Declaration of Paul D. Murphy ("Murphy Decl.") at 2.) Also prior to entering the Settlement Agreement, on or about June 13, 2012, Plaintiff received a letter directly from counsel to the third-party that controlled the Speed Racer website. (Exh. B.) In that letter, counsel to the third-party explained that his company controlled the website and offered a dialogue regarding what to do about the website. Defendants also received a copy of that letter. (Murphy Decl., at ¶ 4.) Plaintiff's counsel apparently ignored the letter.

In late December 2013, after the Settlement Agreement was signed, Plaintiff's counsel emailed Defendants' counsel regarding the websites. (Exh. A.) In response, Defendants' counsel immediately looked into the issue and, less than a week later, gave Plaintiff's counsel the identity of the lawyer who represented the third party who controlled the website. (Id.) Defendants' counsel also gave Plaintiff's counsel another copy of the June 13, 2012, which specifically identified the name of the company that controlled the website: HRN, LLC ("HRN"). (Exh. B.) Defendants' counsel further provided additional written updates, and had further communications with both Plaintiff's counsel and counsel for HRN in an attempt to facilitate the transfer of the domain name. (Murphy Decl. at ¶¶ 3-7.) Much to Defendants' surprise, HRN initially refused to transfer the domain name. (Id. at ¶ 6 and Exh. D.) More recently, however, HRN has indicated that it will voluntarily transfer the domain name (which, as discussed more fully below, effectively moots most if not all of the motion). (Murphy Decl. at ¶ 11.)

### III.
### LEGAL ARGUMENT

**A.** **The Motion Fails Because Plaintiff Failed To Follow Local Rule 7-3.**

As a threshold matter, the motion fails procedurally because Plaintiff has failed to comply with Local Rule 7-3. Plaintiff neither met and conferred regarding this motion, nor included such a representation in the notice of motion. To the extent Plaintiff attempts to characterize a call and an exchange of email that he had with Defendants' counsel as such a meet and confer, that characterization would be inaccurate. That telephone call and exchange related to a separate ex parte application and the focus of those communications was on a proposed stipulation, not this motion. (Murphy Decl. at ¶ 9.)

## B. The Motion Fails Because Plaintiff Cannot Obtain The Relief It Seeks Via Motion.

Similarly, Plaintiff's motion fails because the motion is really a disguised motion for summary judgment on a breach of contract claim, but without any of the procedural protections. While the Settlement Agreement does allow the Court to retain jurisdiction, that agreement did not strip the Individual Defendants of their due process rights. At the absolute minimum, the Individual Defendants are entitled to take discovery relating to their supposed breaches of contract, as well as the numerous affirmative defenses they would have to such breaches including at least laches, waiver, estoppel, and ratification. The Federal Rules of Civil Procedural favor broad discovery rights, not trial by ambush, as Plaintiff is trying to do here.

Indeed, Plaintiff is effectively seeking a permanent, mandatory injunction against each of the three defendants based on the thinnest of records. Affirmative, mandatory injunctions are disfavored. <u>Stanley v. University of Southern California</u>, 13 F.3d 1313, 1320 (9th Cir. 1994) (a mandatory injunction requires "a higher degree of scrutiny because such relief is particularly disfavored under the law of this circuit"). At the absolute minimum, the Individual Defendants are entitled to an evidentiary hearing on the issue. Plaintiff does not want the Individual Defendants to have any of these procedural protections.

In the end, based on the nature of the relief Plaintiff is seeking, the Court should require Plaintiff to file a new lawsuit for breach of contract. This ensures that all parties' due process rights are protected. In the alternative, the Court should set a discovery schedule and a hearing date.

## C. The Motion Fails Because Plaintiff Has Failed To Submit Any Competent Evidence Establishing A Breach.

Plaintiff's motion fails because it neglects to include any competent evidence of any breach of contract. The totality of Plaintiff's "evidence" against

the individual Defendants is: (a) copy of the settlement agreement itself; (b) Plaintiff's *counsel's* unsubstantiated statement that someone from his office discovered that someone had been making postings on www.speedracer.com; and (c) Plaintiff's *counsel's* further unsubstantiated statement that the Defendants failed to identify the third party who controls the website or the last known contact information for that third party. (See Declaration of Jeffrey W. Shields.) That's it.

This evidence is insufficient to prove anything, let alone a breach of contract by each of the three Individual Defendants. Indeed, the latter two items of "evidence" are inadmissible hearsay and/or lacking of foundation. The assertions are also wrong, as Plaintiff has long been aware that the website was under another party's control, and Plaintiff further knows that Defendants' counsel provided Plaintiff's counsel with the last known contact information for the third party. (Exhs. B, E.)

Nor does the fact that a third party now claims ownership of the website necessarily mean that any of the defendants (let alone all of them) knew that the third party would take that position. A representation and warranty is, by definition, based on a party's good faith belief. The fact that a third party now may cybersquatting on the website does not mean that any of the Individual Defendants knew the third party would take that position.

Indeed, without providing Defendants any opportunity to take discovery or otherwise defend their interests, Plaintiff is asking the Court to require all three Individual Defendants to take a number of actions, despite a complete absence of evidence that such actions are necessary, appropriate, or were not already taken. This is plainly inappropriate.

**D. The Motion Fails Because Plaintiff Has Failed To Identify How Each Defendant Breached The Contract.**

The motion also fails for the simple reason that Plaintiff has not even attempted to articulate how *each* of the Individual Defendants breached the

agreement. For example, defendant Michael Cisneros was a low level employee of Speed Racer Enterprises. Nowhere does Plaintiff explain how he could have possibly breached the contract based on the knowledge and information in his possession. This is no accident. Plaintiff is trying to lump all of the Individual Defendants together and treat them as one entity. This is contrary to the obligations imposed by the Settlement Agreement. By failing to particularize the conduct to any of the individuals, Plaintiff has an additional failure of proof.

### E. The Motion Fails Because Defendants' Evidence Shows That It Has Reasonably Cooperated And Is Otherwise Not In Breach.

As explained more fully in the attached Declaration of Paul D. Murphy, Defendants have reasonably cooperated to resolve this issue, and have taken all steps reasonably available to them to get the third party to transfer the domain name. (Murphy Decl. at ¶¶ 3-11 and Exhs. A, C-G.) That is all that is required. If the third party continues to refuse to turn over the website, Plaintiff's remedy is to sue them directly.

### F. By The Time This Motion Is Heard, The Issue Will Probably Be Moot.

Equally perplexing is the fact that Plaintiff and the third party are in the middle of negotiations designed to resolve the website issue. (Murphy Decl. at ¶11.) As a result, counsel for the Individual Defendants emailed Plaintiff's counsel and suggested that the motion be continued to see if that agreement could be finalized. (Exh. H.) Plaintiff refused. (Id.)

Notwithstanding Plaintiff's obstinance, by the time the Court hears this motion, the Individual Defendants expect that Plaintiff and the third party will have reached an agreement to transfer the website. Several reams of paper will have then have been wasted on this opposition brief and Plaintiff's reply brief. Trees deserve better. The Court and the parties will also have wasted their own additional resources marshalling this motion. The Court and the parties also deserve better.

# IV.
# **CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion should be denied.

DATED:  March 4, 2014   Respectfully submitted,

MURPHY ROSEN LLP

By: /s/ Paul D. Murphy
   Paul D. Murphy
   Attorneys for Defendants James J.
   Rocknowski, John E. Rocknowski, and
   Michael S. Cisneros

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

-7-   *PRINTED ON RECYCLED PAPER*
*DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT*

# DECLARATION OF PAUL D. MURPHY

I, Paul D. Murphy, declare:

1. I am an attorney duly licensed to practice before this Court and am a partner of Murphy Rosen LLP, counsel for defendants herein. I represent defendants James Rocknowski, John Rocknowski and Michael Cisneros (the "Individual Defendants") in the above-entitled case. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2. I was the lawyer who represented the Individual Defendants both in defense of the case and in settlement communications with the plaintiff. The Settlement Agreement in this case was finalized by the parties in late November 2013. Several months prior to entering that agreement, I facilitated the gathering of all of the original documents that were in my clients' possession. I then coordinated with Plaintiff's counsel, Jeffrey Shields, for him to obtain possession of these documents, which he did.

3. On or about December 27, 2013, I received an email from Mr. Shields in which he raised the issue that someone had started posting material on the website www.speedracer.com. Despite the fact that I went on vacation the next day, I immediately commenced an investigation into the issue and determined the entity that controlled the website was represented by a lawyer named James Adrian. As part of that investigation, I contacted Mr. Adrian and explained the problem. He asked me to have Mr. Shields contact him directly to see if they could work it out.

4. On January 2, 2014, I then sent Mr. Shields an email identifying Mr. Adrian along with his contact information. I also attached a June 13, 2013 letter I had previously received from Mr. Adrian. In that letter, Mr. Adrian had unilaterally reached out to Mr. Shields prior to the execution of the Settlement Agreement and notified Mr. Shields that the website was maintained by his client,

HRN, LLC.  A true and correct copy of this initial email exchange is attached hereto as Exhibit A.  A true and correct copy of the June 13, 2013 letter is attached hereto as Exhibit B.

5. Rather than follow up with Mr. Adrian, on January 8, 2014, I received a nasty email back from Mr. Shields accusing the Individual Defendants of breaching the Settlement Agreement, accusing them of creating a "mess," and threatening to sue them unless they took various actions.  I responded by pointing out to Mr. Shields that he had known about the identity of Mr. Adrian's clients long before the Settlement Agreement was entered, and the fact that he had slept on his client's rights was not our problem.  I also encouraged Mr. Shields to call Mr. Adrian and try to work it out directly with him.  A true and correct copy of this initial email exchange is attached hereto as Exhibit C.

6. On January 9, 2014, I received an email from Mr. Shields in which he indicated he had spoken to Mr. Adrian and that his client was not willing to relinquish the website.  In response, I notified Mr. Shields that this was contrary to my conversation with Mr. Adrian, but that I would reach out to Mr. Adrian again and see why his position had changed.  A true and correct copy of this initial email exchange is attached hereto as Exhibit D.

7. I spoke with Mr. Adrian on January 10, 2014.  Mr. Adrian told me that the position he had taken with Mr. Shields was not fixed in stone and that he would speak with his client the following week about it and get back to Mr. Shields.  I encouraged Mr. Adrian to find a way to resolve the issue.  I also told Mr. Shields that the only name my clients' had relating to the name of Mr. Adrian's client was HRN, LLC.  A true and correct copy of this initial email is attached hereto as Exhibit E.

8. I then heard nothing for almost one month.  On February 7, 2014, I received an email from Mr. Shields indicating that he had not been able to resolve the issue with Mr. Adrian, and he indicated he wanted our clients to stipulate to

1 extend the time he had to take discovery, on threat of going in ex parte to compel
2 enforcement. I was out of town on February 7, 2014 (which was a Friday), but I
3 responded the following Monday that I was available to talk but that I was not sure
4 my clients could reasonably do anything else to get Mr. Adrian's client to agree to
5 transfer the website. A true and correct copy of this initial email exchange is
6 attached hereto as Exhibit F.

7      9. I then received a call from Mr. Shields. During that call, Mr. Shields
8 told me that he was going to apply ex parte to continue the date for him to take
9 discovery or, in the alternative, make an ex parte application to compel
10 enforcement. I told him that I would consider a stipulation if he would put it in
11 writing, but that if he moved ex parte to compel enforcement, I did not believe the
12 Court would grant such relief. We then discussed a stipulation regarding
13 continuing the time for him to take discovery before the Court closed the case and
14 he wanted my clients also to stipulate to take certain actions during that period
15 (many of which are now the subject of this motion). I told him that if he wanted us
16 to consider a stipulation, he would need to put it in writing. At no time during this
17 call did Mr. Shields indicate that he was going to file a separate motion to enforce
18 the settlement agreement. To the extent the issue came up, it was always in the
19 context of an ex parte application.

20      10. The next day, I received an email from him asking if I had
21 reconsidered. I responded that I needed to see any stipulation in writing. He then
22 responded in writing with a summary of what he said he wanted in a stipulation,
23 which was very different than what we had discussed. I again asked him to put it
24 in writing. He refused. A true and correct copy of our email exchange is attached
25 hereto as Exhibit G.

26      11. Since that time, my client, James Rocknowski, has separately reached
27 out to Mr. Adrian's office and I have spoken with Mr. Adrian directly. Pursuant to
28 those discussions and some related email traffic between Mr. Adrian and Mr.

**MURPHY ROSEN LLP**
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

1 Shields for which I was copied, I understand that they are actively negotiating a
2 resolution of the dispute whereby Mr. Adrian's client would transfer the website to
3 Plaintiff. As a result, on March 3, 2014, I emailed Mr. Shields and asked him if he
4 would be willing to continue this hearing for a few weeks to give time for those
5 negotiations to conclude. Mr. Shields refused, contending that a deal was unlikely
6 (which is contrary to my understanding). A true and correct copy of our email
7 exchange is attached hereto as Exhibit H.

      Executed this 4th day of March 2014, at Santa Monica, California.

                                                  /s/ Paul D. Murphy
                                                  Paul D. Murphy

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201